Slip Op. 25-118

## UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

CHINA CORNICI CO., LTD., and RAOPING HONGRONG HANDICRAFTS CO., LTD,

        Plaintiffs,

v.

UNITED STATES,

        Defendant.

</td><td>

Before: Jane A. Restani, Judge

Court No. 23-00216

</td></tr>
<tr><td>

CHINA CORNICI CO., LTD., and RAOPING HONGRONG HANDICRAFTS CO., LTD,

        Plaintiffs,

v.

UNITED STATES,

        Defendant.

</td><td>

Before: Jane A. Restani, Judge

Court No. 23-00217

</td></tr>
</table>

## OPINION

[Commerce's determinations as to reviews of antidumping and countervailing duty orders is remanded.]

Dated: September 5, 2025

Robert Kevin Williams, Clark Hill PLC, of Chicago, IL, argued for plaintiffs China Cornici Co., Ltd., and RaoPing HongRong Handicrafts Co., Ltd.  With him on the brief were Mark Rett Ludwikowski and Kelsey Christensen, of Washington, DC.

Katy M. Bartelma, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for the defendant.  With her on the brief was Catherine M. Yang.  Of counsel on the brief was Leslie Mae Lewis, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

     Restani, Judge:  This action is a challenge to multiple decisions by the Department of

Commerce ("Commerce") regarding countervailing and antidumping duty rates for China Cornici

Co., Ltd. ("China Cornici") and RaoPing HongRong Handicrafts Co., Ltd. ("RaoPing") on wood

moulding and millwork products from the People's Republic of China ("China"). China Cornici

and RaoPing request that the court hold aspects of Commerce's final results unsupported by

substantial evidence or otherwise not in accordance with law. The United States ("the

government") asks that the court sustain Commerce's final results in both reviews at issue. This

case raises, among other issues, the effect on unfair trade proceedings of 19 U.S.C. §§ 1514 and

1592(c) with respect to finality of liquidation and prior disclosure of entry errors.

## BACKGROUND

On September 11 and 12, 2023, Commerce issued the final results of its administrative

reviews of countervailing and antidumping duties on wood moulding and millwork products from

China. See Wood Mouldings and Millwork Products From the People's Republic of China: Final

Results and Partial Rescission of Countervailing Duty Administrative Review; 2020-2021, 88 Fed.

Reg. 62,319 (Dep't Commerce Sep. 11, 2023) ("Final Countervailing Duty Results"); Wood

Mouldings and Millwork Products From the People's Republic of China: Final Results of

Antidumping Duty Administrative Review; Final Determination of No Shipments; and Partial

Rescission; 2020-2022, 88 Fed. Reg. 62,539 (Dep't Commerce Sep. 12, 2023) ("Final

Antidumping Duty Results"). In the Final Countervailing Duty Results, Commerce assigned

China Cornici and RaoPing the China-wide countervailing duty rate. See Final Countervailing

Duty Results, 88 Fed. Reg. at 62,320–22. In the Final Antidumping Duty Results, Commerce

assigned China Cornici the China-wide countervailing duty rate of 220.87 percent. See Final

Antidumping Duty Results, 88 Fed. Reg. at 62,541–42. In contrast, during the same antidumping

review, Commerce assigned RaoPing a separate antidumping rate of 0.00 percent. See id. at

62,542.  Both final results were issued with accompanying issues and decisions memoranda.  See Wood Mouldings and Millwork Products from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the 2020-2021 Countervailing Duty Administrative Review, C-570-118, POR 6/12/2020-12/31/2021 (Dep't Commerce Sep. 1, 2023) ("Countervailing Duty IDM"); Wood Mouldings and Millwork Products from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the 2020-2022 Antidumping Duty Administrative Review, A-570-117, POR 8/12/2020-1/31/2022 (Dep't Commerce Sep. 5, 2023) ("Antidumping Duty IDM").

China Cornici was assigned the China-wide rate in both reviews as a result of Commerce's determination that the company was ineligible to participate in either administrative review. Countervailing Duty IDM at 35–38; Antidumping Duty IDM at 39–40.  Commerce explained that it could not review China Cornici, and thus could not assign the company individualized rates, because China Cornici lacked suspended entries of subject merchandise.  Countervailing Duty IDM at 38; Antidumping Duty IDM at 39–40.  China Cornici lacked the necessary suspended entries because it mislabeled its entries, causing Customs and Border Protection ("Customs") to liquidate entries of subject merchandise without collecting cash deposits.  Countervailing Duty IDM at 36–38; Antidumping Duty IDM at 39–40.  For the same reason, Commerce rescinded its review of RaoPing in the agency's countervailing duty proceeding.  See Countervailing Duty IDM at 36–38.  Commerce, however, reviewed RaoPing in the agency's antidumping review and granted the company a separate rate.  Antidumping Duty IDM at 36.  RaoPing requested that Commerce apply this separate rate to entries from Chen Chui Global Corp. ("Chen Chui"), the Taiwanese company that sold all of RaoPing's merchandise in the United States.  See id. at 35.

Commerce refused RaoPing's request because Chen Chui[1] was not reviewed under the same

antidumping administrative review and did not submit its own application for a separate rate.[2] Id.

at 36.

The specific reason why the liquidation of plaintiffs' merchandise was not suspended was

that the entries at issue were not identified with the appropriate "Type 3" code for merchandise

subject to an antidumping or countervailing duty order. Countervailing Duty IDM at 37;

Antidumping Duty IDM at 39–40. The importer has attempted to remedy this by making a prior

disclosure under section 1592(c)(4) and tendering the duties that were required to be deposited

upon entry. Countervailing Duty IDM at 37; see also Antidumping Duty IDM at 36; 19 U.S.C.

§ 1592(c)(4).

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

The court will uphold Commerce's determinations in countervailing and antidumping duty reviews

unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance

with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i).

---

[1] The relationship between RaoPing and Chen Chui has been a matter of debate throughout the course of litigation. Before the agency and in the early stages of litigation, RaoPing claimed that Chen Chui was a "doing business as" ("d.b.a") of RaoPing. See e.g., Antidumping Duty IDM at 35 (requesting that Commerce treat Chen Chui as d.b.a. for RaoPing); Compl. at 1, Case No. 23-00216, ECF No. 9 (Oct. 24, 2023) ("23-216 Compl.") (listing RaoPing as "RaoPing . . . (d.b.a. Chen Chui Global Corp.)"). In other words, RaoPing claimed that it and Chen Chui were the same entity. At oral argument, however, RaoPing admitted that this was incorrect, and Chen Chui is akin to an Amazon-like reseller. Oral Argument at 58:22–1:00:52. It is also clear from the recitation of petitioner's comments in the Antidumping Duty IDM that Commerce knew Chen Chui was a Taiwanese trading company. Antidumping Duty IDM at 35.
[2] After oral argument, the court ordered supplemental briefing on the issue of Commerce's refusal to apply RaoPing's separate rate to Chen Chui's imports. Oral Argument at 1:51:55–1:53:30; see also Minute Order, ECF No. 50 (Mar. 25, 2025).

**DISCUSSION**

### I.    Legal Framework

Commerce considers some countries, such as China, "nonmarket economies" where the state distorts domestic commercial markets.  See Jilin Forest Indus. Jinqiao Flooring Grp. Co. v. United States, 145 F.4th 1308, 1312 (Fed. Cir. 2025).  As a result, Commerce generally applies country-wide antidumping rates to all entities located in a nonmarket economy.  Id. at 1311–12. Entities can overcome this presumption of total state control, and receive a separate antidumping rate, by showing that they are not de facto or de jure controlled by the state.  See id. at 1312–13. Entities seeking this separate antidumping rate are required to submit a separate rate application during the relevant administrative review.  See 19 C.F.R. § 351.108(d)(2) (effective Jan. 2025). For countervailing duties, Commerce calculates a duty rate for "each exporter and producer individually investigated."  19 U.S.C. § 1671d(c)(1)(B)(i)(I).  For those exporters and producers not individually investigated in a countervailing duty investigation, Commerce assigns an estimated all-others rate applicable to every entity located in the country being investigated.  Id. Commerce allows "individual exporters or producers" to request an individual countervailing duty rate during an administrative review.  See 19 C.F.R. § 351.213(b)(1) (effective Jan. 2025). Relevant here, Commerce may rescind any administrative review "with respect to a particular exporter or producer . . . [if], during the period covered by the review, there were no entries, exports, or sales of the subject merchandise."  Id. § 351.213(d)(3).  If Commerce rescinds an administrative review, then the individual entity in question cannot receive an individualized countervailing or antidumping duty rate.  See 19 C.F.R. § 351.107(e)(1)(iv) (effective Jan. 2025); id. § 351.107(d)(1)(ii)(B); Final Antidumping Duty Results, 88 Fed. Reg. at 62,540–41.

## II.     China Cornici and RaoPing Were not Required to Exhaust Their Purely Legal Claim

The government argues that China Cornici and RaoPing failed to exhaust their argument that Commerce lacked the authority to rescind their administrative reviews because they failed to raise this argument before the agency.[3] Def.'s Resp. to Mot. for J. on Agency R. at 11–13, Case No. 23-00216, ECF No. 23 (July 30, 2024) ("Def.'s 23-216 Br."); Def.'s Resp. to Mot. for J. on the Agency R. at 13–15, Case No. 23-00217, ECF No. 23 (July 30, 2024) ("Def.'s 23-217 Br."). The government contends that China Cornici and RaoPing were required to raise this argument in front of the agency before raising it in front of the court. Def.'s 23-216 Br. at 11; Def.'s 23-217 Br. at 13. China Cornici and RaoPing respond that they could not raise the argument before the agency because Commerce had not yet finalized the recission. Pls.' Reply at 2–4, Case No. 23-00216, ECF No. 25 (Sep. 25, 2024) ("Pls.' 23-216 Reply"); Pls.' Reply at 6, Case No. 23-00217, ECF No. 24 (Sep. 25, 2024) ("Pls.' 23-217 Reply").

The court "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). The Federal Circuit has held that "a party's failure to raise an argument before Commerce constitutes a failure to exhaust its administrative remedies." Qingdao Sea-Line Trading Co. v. United States, 766 F.3d 1378, 1388 (Fed. Cir. 2014) (citations omitted). The court does not address plaintiffs' claim of inability to raise this argument before the agency. The court,

---

[3] The government also argues that China Cornici and RaoPing waived this argument by failing to articulate it in their complaints. Def.'s Resp. to Pls.' Mot. for J. on the Agency R. at 11–12, Case No. 23-00216, ECF No. 23 (July 30, 2024) ("Def.'s 23-216 Br."); Def.'s Resp. to Mot. for J. on the Agency R. at 13–14, Case No. 23-00217, ECF No. 23 (July 30, 2024) ("Def.'s 23-217 Br."). While the complaints do not lay out the argument in detail, China Cornici and RaoPing made clear that they were arguing that Commerce improperly rescinded the reviews. 23-216 Compl. at 6; Compl. at 7, Case No. 23-00217, ECF No. 9 (Oct. 24, 2023) ("23-217 Compl."). Accordingly, the court concludes that the parties did not waive this argument.

however, may excuse a party's failure to argue a "pure question of law" to the agency. <u>Agro Dutch Indus. Ltd. v. United States</u>, 508 F.3d 1024, 1029 (Fed. Cir. 2007) (noting that the Court of International Trade did not abuse its discretion in excusing the party's failure to raise a "pure question of law" during proceedings before Commerce). An argument constitutes a "pure question of law" when the court can resolve it using "[s]tatutory construction alone," <u>id.</u>, in a way that does not require "further factual development." <u>Itochu Bldg. Prods. v. United States</u>, 733 F.3d 1140, 1146 (Fed. Cir. 2013).

Commerce rescinded China Cornici and RaoPing's administrative reviews because the parties lacked suspended entries of subject merchandise. <u>See</u> <u>Countervailing Duty IDM</u> at 36–38. Commerce stated that it had the authority to rescind the reviews for this reason under 19 C.F.R. § 351.213(d)(3). <u>Id.</u> at 38. That provision allows Commerce to rescind an administrative review when it finds that "there were no entries . . . of the subject merchandise." 19 C.F.R. § 351.213(d)(3). China Cornici and RaoPing now assert that section 351.213(d)(3) allows Commerce to rescind an administrative review only when it finds no entries of subject merchandise at all, in contrast to the entries actually made here. <u>See</u> Pls.' Mot. for J. on the Agency R. at 4–5, Case No. 23-00216, ECF No. 21 (Apr. 26, 2024) ("Pls.' 23-216 Br."); Pls.' Mot. for J. on the Agency R. at 8–10, Case No. 23-00217, ECF No. 21 (Apr. 26, 2024) ("Pls.' 23-217 Br."). Plaintiffs contend that because Commerce rescinded the reviews based on a lack of suspended entries, Commerce exceeded its authority under this provision. Pls.' 23-217 Br. at 3–6; Pls.' 23-217 Br. at 8–10.

The issue of whether the agency lacked authority to rescind China Cornici and RaoPing's reviews is a pure question of law. To resolve this issue, the court needs only to decide whether section 351.213(d)(3) granted Commerce the authority to rescind the administrative reviews at

issue based on a lack of suspended entries of subject merchandise.  See Countervailing Duty IDM

at 36.  No facts from this case will change the meaning of that provision.

> III.  **Commerce Improperly Rescinded China Cornici and RaoPing's Administrative Reviews**
>
>> a.  **Plaintiffs needed only entries of subject merchandise, not suspended entries, to qualify for an administrative review**

China Cornici and RaoPing argue that Commerce lacked the authority to rescind their

administrative reviews because under section 351.213(d)(3), Commerce can only rescind a review

if it finds no entries of subject merchandise whatsoever.  Pls.' 23-216 Br. at 4; Pls.' 23-217 Br. at

9.  The parties argue that because Commerce instead relied on a lack of suspended entries of subject

merchandise to rescind China Cornici and RaoPing's reviews, Commerce exceeded its authority

under the regulation.  Pls.' 23-216 Br. at 4, 6; Pls.' 23-217 Br. at 9.  The government counters that

it is Commerce's practice to require an exporter to have suspended entries of subject merchandise

if the exporter wishes to participate in an administrative review.  Def.'s 23-216 Br. at 16; Def.'s

23-217 Br. at 19.  The government contends that this practice is mandated by the overall statutory

framework because an entry is unsuspended only if the importer claimed the entry was not subject

to any antidumping or countervailing duty orders, which precludes the entry from being "subject

merchandise" covered by the administrative review.  Def.'s 23-216 Br. at 18; Def.'s 23-217 Br. at

17–18 (both citing Shanghai Sunbeauty Trading Co. v. United States, 380 F. Supp. 3d 1328, 1336

(CIT 2019)).  The government also argues that if Commerce was forced to conduct administrative

reviews in the absence of suspended entries, importers would be incentivized to mislabel their

entries in an attempt to avoid cash deposits and only pay duties once any administrative reviews

conclude.  Def.'s 23-216 Br. at 19; Def.'s 23-217 Br. at 22.

The final liability for antidumping and countervailing duties is determined retrospectively, after importation, and often after a periodic administrative review of the applicable orders. 19 C.F.R. § 351.212(a). This final computation of duties is referred to as "liquidation." Acquisition 362, LLC v. United States, 59 F.4th 1247, 1252 (Fed. Cir. 2023) (citation omitted). To aid this retrospective system, Customs will delay liquidation of entries covered by an antidumping or countervailing duty order until the final duties are calculated. See id. Importers pay cash deposits on these "suspended" or "unliquidated" entries pending final duties. See id. Once final duties are assessed, "[a]n importer will have to pay any shortfall . . . and will be entitled to a refund" if the duties owed differ from the cash deposit paid. Id.

Commerce's periodic review of antidumping and countervailing duty orders form "the basis for the assessment of countervailing or antidumping duties on entries of merchandise covered by the determination." 19 U.S.C. § 1675(a)(2)(C). Section 1675 governs Commerce's process for conducting a review. Id. § 1675. Because the statute contains no guidance on when Commerce may rescind a review of either an entire order or of an individual exporter's duty rate, the agency has created procedures for doing so. See 19 C.F.R. § 351.213(d). Relevant here, Commerce can rescind a review "in whole or only with respect to a particular exporter or producer, if . . . during the period covered by the review, there were no entries . . . of the subject merchandise." Id. § 351.213(d)(3). The phrase "entries . . . of the subject merchandise" is distinct from "suspended entries" because non-suspended and even liquidated entries remain subject to antidumping and countervailing duty orders, with importers often owing duties and penalties under 19 U.S.C. § 1592.[4] Hubbell Power Sys., Inc. v. United States, 36 CIT 1324, 1329, 884. F. Supp. 2d 1283,

---

[4] In Shanghai Sunbeauty, the court upheld Commerce's requirement of suspended entries for an administrative review because otherwise "Commerce [would] review an entry of non-subject merchandise . . . surely not the result intended by a statute the purpose of which is to provide

1289 (2012).

Commerce rescinded administrative reviews for China Cornici and RaoPing[5] because the

entities had "no reviewable entries of subject merchandise . . . for which liquidation is suspended."

Countervailing Duty IDM at 36, 38 (both citing 19 C.F.R. § 351.213(d)(3)); see also Antidumping

Duty IDM at 40.  It determined that China Cornici and RaoPing's unsuspended entries of subject

merchandise were not enough to entitle the parties to an administrative review, even though the

parties had paid duties on those entries as part of their effort to fix their mislabeling of the entries

that caused the merchandise to be liquidated in error.  See Countervailing Duty IDM at 36–38;

Antidumping Duty IDM at 39–40.  The agency reasoned that a prerequisite to administrative

review is a showing of "entries of subject merchandise . . . for which liquidation is suspended."

Countervailing Duty IDM at 36.  Accordingly, because China Cornici and RaoPing's entries were

mislabeled and therefore unsuspended, Commerce found that they could not be subject to

administrative review.  See id. at 38.  Because Commerce rescinded these reviews, the parties were

ineligible for individualized duty rates in the relevant proceedings.  See id. at 35–38.

Under the plain language of the regulation, however, Commerce lacked authority to rescind

---

reviews of merchandise subject to [a] []duty order."  380 F. Supp. at 1335.  The court sees Shanghai
Sunbeauty as distinguishable from the instant case.  In Shanghai Sunbeauty, the plaintiff did not
confess to mislabeling entries or show that it tried to remedy the situation.  See id. at 1331–35.
The plaintiff only claimed that it had entries of subject merchandise, but did not present the same
kind of record evidence China Cornici and RaoPing have presented in this case.  See id. at 1332–
33.  That case, therefore, presented significantly different facts and raised the possibility that the
plaintiff was trying to dishonestly avoid applicable duties.  That does not seem to be the case here.
[5] For China Cornici, this was in both case 23-00216 (countervailing duties) and case 23-00217
(antidumping duties).  For RaoPing, this was only in case 23-00216.  RaoPing was able to
participate in the antidumping duty review because Commerce found that it had suspended entries
of subject merchandise.  See Antidumping Duty IDM at 36.  In the countervailing duty review,
Commerce rescinded its review of RaoPing for the same reasons that it rescinded its review of
China Cornici—that the company lacked suspended entries of subject merchandise.
Countervailing Duty IDM at 37; Def.'s Supp. Br. at 10–11,  ECF No. 54 (Apr. 11, 2025) ("Def.'s
Supp. Br.").

the administrative reviews solely due to a lack of suspended entries. 19 C.F.R. § 351.213(d)(3)

allows for recission only if "there were no entries . . . of the subject merchandise." 19 C.F.R.

§ 351.213(d)(3). The regulation does not include or imply a requirement that these entries be

suspended. In later-promulgated regulations, Commerce used explicit language when it required

that entries be "suspended" for particular purposes. For example, section 351.108(d)(2) requires

entities applying for a separate antidumping rate to show "an entry of subject merchandise <u>for

which liquidation was suspended</u>."[6] <u>Id.</u> § 351.108(d)(2) (emphasis added). The court presumes

that Commerce acted intentionally when it included this requirement in one regulation but omitted

it in another. <u>Cf.</u> <u>City & Cnty. of San Francisco, California v. Env't Prot. Agency</u>, 145 S. Ct. 704,

714 (2025) (holding that the Court "cannot believe that Congress omitted [a] term" used elsewhere

in the same statute "simply because it wanted to save ink or assumed that . . . the omission of the

term was inconsequential"). Accordingly, the court concludes that for Commerce to rescind the

reviews at issue, it would have had to find that there were no entries of subject merchandise at all.

Commerce is incorrect that the broader statutory scheme requires suspended entries for an

administrative review. Customs retains authority to collect duties on wrongly liquidated entries

such that "liquidation will not bar collection of [applicable antidumping and countervailing]

duties." <u>Hubbell</u>, 36 CIT at 1329, 884 F. Supp. 2d at 1289 (discussing 19 U.S.C. § 1592). Customs

would have no legal basis to collect these duties unless wrongly liquidated entries remain entries

of merchandise covered by antidumping and countervailing duty orders. <u>Id.</u> Likewise, it is "not

---

[6] Putting aside that what rate will be assigned and whether a review will occur are two separate matters, Commerce could not rescind China Cornici's application on the basis that it failed to make this showing because the regulation was not yet in effect. <u>See</u> 19 C.F.R. § 351.108(d)(2) (effective Jan. 2025). The court, therefore, does not need to decide if that regulation comports with the statute. The court need only decide whether Commerce's practice of requiring suspended entries for a review was lawful at the time period at issue.

futile for Commerce to calculate a rate for liquidated entries because . . . the calculated rate will

be used to assess duties and determine penalties [under section 1592]."[7] Id. Nor would allowing

for review of liquidated entries create a situation where "importers would lack incentive to properly

classify merchandise" in hopes their liability is later erased by an administrative review. Def.'s

23-216 Br. at 19. The statute creates steep financial penalties for misidentifying merchandise. See

19 U.S.C. § 1592(c); Hubbell, 36 CIT at 1329, 884 F. Supp. 2d at 1289. Much water has passed

under the bridge since Hubbell, but the central inquiry for recission of a review remains whether

there were no entries of subject merchandise at all.

In fact, the statutory scheme suggests that Commerce will conduct administrative reviews

for entities in China Cornici and RaoPing's position. Under section 1592, Customs may collect

duties on wrongly liquidated entries, but only to the extent the government has been deprived of

"lawful" duties.[8] 19 U.S.C. § 1592(a)(1). Likewise, Customs is entitled to demand that only the

"lawful duties . . . be restored." Id. § 1592(d). The lawful level of duties, however, can only be

determined after an administrative review. See id. § 1675(a)(2)(C). In connection with their prior

disclosure under section 1592, China Cornici and RaoPing, while still contesting that the duty rate

was unlawful, paid millions of dollars in estimated antidumping and countervailing duties based

on the China-wide duty rates.[9] See, e.g., Response from Clark Hill PLC to Sec of Commerce

---

[7] 19 U.S.C. § 1675(a)(1) provides for both the assessment for the period of review and estimated duties for the future. See 19 U.S.C. § 1675(a)(1); 19 C.F.R. 351.212(a).

[8] This provision appears to operate as an exception to the default rule, codified in 19 U.S.C. § 1514, that liquidation is "final and conclusive upon all persons" outside of a protest. 19 U.S.C. § 1514(a)(5); 19 U.S.C. § 1592(d) ("Notwithstanding section 1514 of this title, if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a), the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed."). The government has not set forth in this matter its view of the interaction among the statutes.

[9] In fact, the statute accounts for the fact that the amount of duties owed may be uncertain at the time of entry and fully calculated later. Under section 1592, the duties owed are based on "the

<u>Pertaining to Aventra, Comments on Notice of Intent to Rescind Review, In Part</u>, Ex. 1 at Appx.

81235, Case No. 23-00216, ECF No. 30-4 (Oct. 16, 2025) ("<u>China Cornici Comments on Intent to

Rescind Review</u>").  The government can only retain these duties if those rates are "lawful" as

applied to China Cornici and RaoPing.  19 U.S.C. § 1592(c)(4)(B).  Once the parties tendered this

money, however, they likely had no separate cause of action to contest the amount paid or the

applied duty rate.  See <u>Tikal Distrib. Corp. v. United States</u>, 21 CIT 715, 719–20, 970 F. Supp.

1056, 1061 (1997).  Thus, the only way to ensure that the duties paid were lawful within the

meaning of section 1592 would be through an administrative review.  The use of the words "lawful

duties" suggests that even liquidated entries can be subject to such reviews.

### b. Commerce ignored overwhelming record evidence showing entries of subject merchandise

China Cornici and RaoPing argue that Commerce ignored evidence that their entries of

merchandise were subject to the antidumping and countervailing duty orders under review and,

accordingly, were eligible for administrative review.  Pls.' 23-216 Br. at 6–8; Pls.' 23-217 Br. at

10–13.  The government responds that because China Cornici and RaoPing mislabeled their

entries, the Customs forms Commerce normally relies on to show entries of subject merchandise

only showed that the parties had entries of non-subject merchandise.  Def.'s 23-216 Br. at 21–23;

Def.'s 23-217 Br. at 23–25.  The government adds that even if the entries were of subject

merchandise, the evidence on the record shows only unsuspended entries, and that Commerce

could only consider suspended entries when determining eligibility for an administrative review.

Def.'s 23-216 Br. at 25–27; Def.'s 23-217 Br. at 25–27.  Commerce conflates whether it will

---

amount of lawful duties, taxes, and fees of which the United States is or <u>may</u> be deprived."  19 U.S.C. § 1592(b)(4)(B) (emphasis added).  Further, tender of duties may be delayed beyond the time of disclosure, for as long as allowed by Customs.  <u>Id.</u> § 1592(b)(4)(B).

conduct a review and what rate it will assign.  The court sees a distinction.  See supra, part III-a.

The court will uphold Commerce's determinations in antidumping and countervailing duty proceedings unless they are unsupported by substantial evidence.    See 19 U.S.C. § 1516a(b)(1)(B)(i).  The substantial evidence standard asks whether the agency has produced "sufficien[t] evidence" to support its decision.  Biestek v. Berryhill, 587 U.S. 97, 102–33 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (internal quotations omitted)).  Substantial evidence constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. at 104 (quoting Consolidated Edison, 305 U.S. at 229 (internal quotations omitted)).  When making a determination, Commerce must consider "important" as well as "detracting information in the record and . . . connect the facts found to the choices made."  OCP S.A. v. United States, Slip Op. 25-51, 2025 WL 1837257, at *11 (CIT Apr. 22, 2025).

Commerce refused to consider the evidence presented by China Cornici and RaoPing that they made entries of subject merchandise.  Countervailing Duty IDM at 37–38; Antidumping Duty IDM at 39–40.  China Cornici and RaoPing presented evidence that they entered goods subject to the relevant orders, but these entries were liquidated without payment of the necessary duties because the parties had mislabeled their entry forms.  See Countervailing Duty IDM at 36–37; Antidumping Duty IDM at 39–40.  The parties also showed that they were in the process of asking Customs to recategorize the entries as suspended during the administrative review.  Countervailing Duty IDM at 36; see Antidumping Duty IDM at 39.  Commerce, however, rejected this evidence on the basis that the agency relies on Customs data to decide if entities have entries of subject merchandise and does not have to look at contradicting information.  Countervailing Duty IDM at 37–38; Antidumping Duty IDM at 39–40.  The agency reasoned that until Customs recategorized

the entries, these forms would show that China Cornici and RaoPing had no entries of subject merchandise, and that Commerce cannot be expected to disregard what these forms say. See Countervailing Duty IDM at 37–38; Antidumping Duty IDM at 39–40.

Commerce's decision is unsupported by substantial evidence. China Cornici and RaoPing presented extensive record evidence showing that they had entered merchandise subject to the relevant orders, had liability for duties under those orders, and intended to pay those duties. See China Cornici Comments on Intent to Rescind Review, Ex. 1; Countervailing Duty IDM at 36; see also Antidumping Duty IDM at 39. Rather than dispute this evidence, the government reiterates Commerce's view that Commerce can rely solely on Customs entries forms when determining if an entry is subject merchandise, even when the parties tell Commerce those forms were mislabeled. At oral argument, the court asked the government for additional evidence that the parties did not make entries of subject merchandise. Oral Argument at 31:06. The government continued to point to the mislabeled entry paperwork. Id. at 31:08–38:00. The court concludes that mislabeled paperwork is not enough to meet the substantial evidence standard. The substantial evidence standard requires that Commerce consider "important" information on the record. OCP, 2025 WL 1837257, at *11. Commerce cannot fall back on the internal procedures of another agency of the United States while closing its eyes to mountains of other evidence.

On remand Commerce shall consider under what circumstances and how to adjust its proceedings when prior disclosures and deposits of duties are made in an attempt to remedy mistakes on entry papers, addressing all the statutes at play, not just unfair trade statutes and preferred practices.

## IV.   Commerce Unreasonably Denied Chen Chui a Separate Rate

China Cornici and RaoPing argue that Commerce's refusal to give Chen Chui, RaoPing's

distributor, a separate antidumping rate is unsupported by substantial evidence and not in accordance with law. Pls.' 23-217 Br. at 4–8; Pls.' 23-217 Reply at 3–5. The parties add that Commerce cannot require Chen Chui to apply for a separate rate because, as a Taiwanese trading company, Chen Chui has no ability to fill out a separate rate application or participate in an administrative review of an antidumping order applicable to China. Pls.' 23-217 Reply at 4. The government responds that Chen Chui was required to be under review and to submit its own separate rate application even though it is a Taiwanese-owned company located in Taiwan. Def.'s Supp. Br. at 6–7, ECF No. 54 (Apr. 11, 2025) ("Def.'s Supp. Br.").

If an entity with a separate antidumping rate in a nonmarket economy sells goods through a third-country reseller, Commerce "will normally . . . apply the current separate cash deposit rate applicable to the nonmarket economy country exporter . . . to the reseller to those entries of the subject merchandise." 19 C.F.R. § 351.107(d)(1)(ii)(C). Chen Chui's entered goods were exported by RaoPing, and RaoPing was eligible for a separate rate; Chen Chui itself, however, was not allowed to take advantage of that rate.[10] Antidumping Duty IDM at 36.

Commerce departs, without explanation, from the language of § 351.107(d)(1)(ii)(C), which states that the agency would normally apply RaoPing's separate rate to a reseller like Chen Chui. Commerce also apparently incorrectly demanded that Chen Chui submit a separate rate application. The agency maintains that because Chen Chui "is indisputably a separate entity, there is no basis for Commerce to extend RaoPing's separate rate" and that "Chen Chui was required to . . . [submit] its own [separate rate application]." Def.'s Supp. Br. at 6–7. Commerce acted in

---

[10] After oral argument, the court ordered supplemental briefing on this issue to clarify if, and by what means, Chen Chui could apply for a separate rate despite being in Taiwan. Oral Argument at 1:51:55–1:53:30. No clear explanation was forthcoming. The policy provided by Commerce with its brief does not seem to apply to these facts. See Def.'s Supp. Br. at 5 (citing Import Administration Policy Bulletin 05.1 at 1 (Apr. 5, 2005)).

contradiction to the language of section 351.107(d)(1)(ii)(C), which says Chen Chui would normally get RaoPing's separate rate, without explaining this departure.  See 19 C.F.R. § 351.107(d)(1)(ii)(C).  The relevant regulation states that the country-wide antidumping duty rate applies to "entities located in that nonmarket economy."  Id. § 351.108(a)(1).  No regulation indicates that a third-country reseller must show an absence of government control as to itself, unless it is owned by a nonmarket economy government.  Id. § 351.108(a)(3).

Given that Commerce is required to follow its regulations, its decision to deny Chen Chui a separate rate on the basis it cited is not in accordance with law.  Commerce reviewed overwhelming evidence that RaoPing was the source for Chen Chui's goods and conceded that this was the case.  Antidumping Duty IDM at 36  If some required step was missing for the entries at issue to be assigned RaoPing's rate Commerce shall spell it out clearly.

## CONCLUSION

For the foregoing reasons, the court remands Commerce's Final Countervailing Duty Results and Final Antidumping Duty Results for a determination consistent with this opinion. Commerce must reconsider its determinations (1) to rescind the administrative reviews for China Cornici and RaoPing, and (2) to refuse to apply RaoPing's separate antidumping duty rate to Chen Chui's entries.  The remand determination shall be issued within 90 days hereof.  Comments may be filed 30 days thereafter and any response 15 days thereafter.

/s/ Jane A. Restani
Jane A. Restani, Judge

Dated: September 5, 2025
      New York, New York